*633 GILBERT, P.J.
*1202 People v. Blackburn (2015) 61 Cal.4th 1113, 191 Cal.Rptr.3d 458, 354 P.3d 268 holds that a trial court must advise a defendant in an MDO (mentally disordered offender) recommitment hearing of his or her right to a jury trial. We stress that Blackburn means what it says and applies to all MDO hearings, including original commitment hearings.
Dakota Blancett appeals an order determining him to be an MDO and committing him to the Department of Mental Health for involuntary treatment. ( Pen. Code, § 2962 et seq. )[1] We reverse and hold that Blancett's waiver of the right to a jury trial was not knowing, voluntary, and intelligent pursuant to the totality of circumstances. ( § 2962, subd. (b) ; People v. Daniels (2017) 3 Cal.5th 961, 221 Cal.Rptr.3d 777, 400 P.3d 385 [lead opn. of Cuéllar, J.] ( Daniels ); People v. Sivongxxay (2017) 3 Cal.5th 151, 166, 219 Cal.Rptr.3d 265, 396 P.3d 424 ( Sivongxxay ); People v. Blackburn , supra , 61 Cal.4th 1113, 1116, 1136, 191 Cal.Rptr.3d 458, 354 P.3d 268 ( Blackburn ).)
Prior to conducting a bench trial, the trial court must obtain personally from an MDO defendant a knowing, intelligent, and voluntary waiver of the right to a jury trial unless the court finds substantial evidence that the defendant lacks the capacity to make such a waiver. ( Blackburn , supra , 61 Cal.4th 1113, 1116, 1136, 191 Cal.Rptr.3d 458, 354 P.3d 268.) Here the record is bereft of evidence demonstrating that Blancett was sufficiently advised of his right to a jury trial and that he knowingly and voluntarily waived that right.
*1203 FACTUAL AND PROCEDURAL HISTORY
On April 29, 2014, Blancett pleaded guilty to two counts of child molestation. (§ 288, subd. (a).) The criminal offenses occurred in September 2013, when Blancett touched the genitals of a three-year-old boy and a two-year-old girl. The trial court sentenced Blancett to a three-year prison term for the two counts.
On July 13, 2016, the Board of Parole Hearings (Board) determined that Blancett was an MDO pursuant to the criteria of section 2962. As a condition of parole, the Board required him to accept treatment from the Department of Mental Health. On July 19, 2016, Blancett filed a petition with the trial court pursuant to section 2966, subdivision (b) to contest this decision.
Prior to the hearing regarding the petition, the trial court appointed counsel for Blancett. Counsel accepted the appointment and then immediately requested a court trial:
"[Counsel]: Yes. We'd like to set it for court trial.
"The Court: All right. So, Mr. B., [counsel] says that you are okay with having a judge decide your case and not a jury?
"[Blancett]: Yes, your honor.
"The Court: That's okay with you?
"[Blancett]: Yes, your honor.
"The Court: All right."
This was the only colloquy between the court and Blancett regarding advisement of his right to a jury trial and the court's acceptance of a knowing and intelligent waiver.
Expert Witness Testimony
At the hearing, Doctor Angie Shenouda, a forensic examiner for Atascadero State Hospital, testified that she interviewed Blancett and reviewed his hospital records *634 and written MDO evaluations. She concluded that he met the MDO criteria of section 2962. Specifically, Shenouda opined in part that Blancett suffers from the severe mental disorder of pedophilia and that he presents a substantial physical danger to others. To support her opinion, she *1204 pointed out that Blancett lacks insight into his disorder, had not completed sex offender or substance abuse treatment, and had no relapse-prevention plan.
Written MDO Evaluations
Doctors J. Kelly Moreno, Christopher G. Matosich, Stacy McLain, and Craig West, respectively, interviewed Blancett and reviewed his hospital and medical records in the course of their evaluations. Moreno and Matosich opined that Blancett met the MDO criteria of section 2962 ; McLain and West opined that he did not.
Findings, Order and Appeal
Following Shenouda's testimony and the trial court's review of the written MDO evaluations, the court determined that Blancett met the requirements of section 2962 beyond a reasonable doubt. The court then committed him to the Department of Mental Health for involuntary treatment.
Blancett appeals and contends that his waiver of the right to a jury trial was not knowing and intelligent pursuant to the totality of the circumstances. ( Sivongxxay , supra , 3 Cal.5th 151, 166, 219 Cal.Rptr.3d 265, 396 P.3d 424 [a defendant's waiver of the right to jury trial may not be accepted by the trial court unless it is both knowing and intelligent, i.e., made with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it].)
DISCUSSION
Blancett contends that the trial court erred by not completely advising him of the right to, and the attributes of, a jury trial prior to accepting his jury trial waiver. (§ 2966, subd. (b) ["The court shall advise the petitioner of ... the right to a jury trial"]; Blackburn , supra , 61 Cal.4th 1113, 1130, 191 Cal.Rptr.3d 458, 354 P.3d 268 [the decision to waive a jury trial belongs to the defendant "in the first instance"].) He asserts that the error is reversible per se. ( Blackburn , at pp. 1132-1133, 191 Cal.Rptr.3d 458, 354 P.3d 268 [trial court did not advise defendant of his right to a jury trial or obtain a personal waiver thereof].)
In Blackburn , supra , 61 Cal.4th 1113, 1124-1125, 1136, 191 Cal.Rptr.3d 458, 354 P.3d 268, our Supreme Court held that a defendant in MDO recommitment proceedings must be personally advised of the right to a jury trial, and that any waiver thereof must be personal, knowing, and voluntary. (§ 2972, subd. (a).) The court reasoned in part that MDO commitment proceedings are not ordinary civil actions, but are special proceedings of a civil nature that threaten the possibility of a significant deprivation of liberty. ( Blackburn , at p. 1124, 191 Cal.Rptr.3d 458, 354 P.3d 268 ;
*1205 id. at p. 1134, 191 Cal.Rptr.3d 458, 354 P.3d 268 [MDO commitment scheme is " 'a civil hearing with criminal procedural protections' "].) Accordingly, "a jury trial is the default procedure absent a personal waiver." ( Id. at p. 1131, 191 Cal.Rptr.3d 458, 354 P.3d 268.) The court did allow for defendant's counsel, however, to "control[ ] the waiver decision" in the event of substantial evidence of defendant's incompetence. ( Ibid. )
Here Blancett challenged the Board's determination that he met the statutory criteria for an initial MDO commitment. Section 2966, subdivision (b), applicable to initial commitment proceedings, provides: "The court shall advise the petitioner *635 of his or her right to be represented by an attorney and of the right to a jury trial." The language of sections 2972, subdivision (a) (recommitment proceedings) and 2966, subdivision (b) is nearly identical and the statutes should receive the same interpretation because they embrace the same subject matter. ( People v. Tran (2015) 61 Cal.4th 1160, 1166, 191 Cal.Rptr.3d 251, 354 P.3d 148 [construing parallel language in section 1026.5].) Therefore, we hold that section 2966, like section 2972, requires the trial court to advise the petitioner in MDO commitment proceedings of the right to a jury trial and, before holding a bench trial, to elicit a personal waiver of that right unless the court finds substantial evidence that the petitioner lacks the capacity to make a knowing and voluntary waiver. ( Blackburn , supra , 61 Cal.4th 1113, 1116, 1136, 191 Cal.Rptr.3d 458, 354 P.3d 268.)
In Sivongxxay , supra , 3 Cal.5th 151, 219 Cal.Rptr.3d 265, 396 P.3d 424, our Supreme Court considered the issue of a knowing and intelligent waiver of the right to a jury trial in the context of the guilt and penalty phases of a death-penalty prosecution. The court affirmed that a knowing, intelligent, and express personal waiver of the jury trial right is required. ( Id. at p. 166, 219 Cal.Rptr.3d 265, 396 P.3d 424.) Resolution of the validity of a waiver depends upon " 'the unique circumstances of each case.' " ( Ibid. , citing Adams v. U.S. ex rel. McCann (1942) 317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 268.) "Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial. We instead examine the totality of the circumstances." ( Id. at p. 167, 219 Cal.Rptr.3d 265, 396 P.3d 424.)
Sivongxxay concluded, based upon its specific circumstances, that the defendant's waiver was knowing and intelligent. ( Sivongxxay , supra , 3 Cal.5th 151, 167, 219 Cal.Rptr.3d 265, 396 P.3d 424.) Nevertheless, the court emphasized "the value of a robust oral colloquy" in eliciting a knowing, intelligent, and voluntary waiver of a jury trial. ( Id. at p. 169, 219 Cal.Rptr.3d 265, 396 P.3d 424.) The court then offered general guidance and a recommendation that "[g]oing forward" the trial courts advise defendants of "the basic mechanics of a jury trial in a waiver colloquy," including jury selection and jury unanimity. ( Ibid . ) Specifically, the court recommended that advisements include statements that a jury consists of 12 members of the community; defendant, through counsel, may participate in jury selection; all jury *1206 members must unanimously agree upon a verdict; and, if a defendant waives the right to a jury trial, the judge alone will decide guilt or innocence. ( Ibid. ) The court also recommended that the trial court take additional steps to ensure that the defendant comprehends what the jury trial right entails, e.g., ask defendant whether he has consulted with his attorney, whether counsel has explained the differences between a jury and a bench trial, and whether defendant understands the right he is waiving. ( Id. at pp. 169-170, 219 Cal.Rptr.3d 265, 396 P.3d 424.) "Ultimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and intelligently." ( Id. at p. 170, 219 Cal.Rptr.3d 265, 396 P.3d 424.)
Our review of the record indicates that Blancett did not waive his right to a jury trial with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. ( Sivongxxay , supra , 3 Cal.5th 151, 166, 219 Cal.Rptr.3d 265, 396 P.3d 424.) The trial court did not inform Blancett that he had a *636 right to a jury trial, nor did the court explain the significant attributes or mechanics of a jury trial. ( Id. at p. 169, 219 Cal.Rptr.3d 265, 396 P.3d 424.) Neither did the court inquire whether Blancett had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether Blancett had any questions about the waiver. ( Id. at pp. 169-170, 219 Cal.Rptr.3d 265, 396 P.3d 424.) In a barebones colloquy, the court asked only if Blancett was "okay" with a court trial instead of a jury trial. ( Daniels , supra , 3 Cal.5th 961, 993, 221 Cal.Rptr.3d 777, 400 P.3d 385 [lead opn. of Cuéllar, J.] [55] ["[T]he trial court is not merely a passive receiver of an attempted waiver"].) Indeed, the court appointed counsel moments before Blancett entered his waiver and there is no record of discussion between Blancett and his attorney prior to the waiver.
Moreover, this was Blancett's initial MDO commitment and the record does not suggest that Blancett was familiar with MDO proceedings or that he was aware that he was entitled to a jury trial. Although he pleaded guilty to two counts of child molestation two years prior to the MDO hearing, we have no record of the advisements he received before entering that plea. On this record, we do not presume that Blancett was legally sophisticated.
Blackburn , supra , 61 Cal.4th 1113, 1136-1137, 191 Cal.Rptr.3d 458, 354 P.3d 268, considered the consequences of a trial court's failure to expressly advise an MDO of his right to a jury trial. "[A] trial court's failure to properly advise an MDO defendant of the right to a jury trial does not by itself warrant automatic reversal. Instead, a trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." ( Id. at p. 1136, 191 Cal.Rptr.3d 458, 354 P.3d 268.) In view of the trial court's stark colloquy, the lack of evidence that Blancett discussed his jury trial right and waiver with *1207 counsel, Blancett's inexperience with the criminal justice system, and Blancett's lack of familiarity with MDO proceedings, we conclude that his waiver was not knowing and intelligent. ( Daniels , supra , 3 Cal.5th 961, 991, 221 Cal.Rptr.3d 777, 400 P.3d 385 [lead opn. of Cuéllar, J.] [50] ["[A] reviewing court satisfies itself of a legitimate waiver only when the record affirmatively demonstrates it was knowing and intelligent"]; Sivongxxay , supra , 3 Cal.5th 151, 166, 219 Cal.Rptr.3d 265, 396 P.3d 424.) Blackburn preceded Blancett's MDO hearing by one year and the trial court here could not have reasonably relied upon pre- Blackburn law. For this reason, the error constitutes a miscarriage of justice and requires reversal, not a remand for further proceedings. ( Blackburn , at p. 1117, 191 Cal.Rptr.3d 458, 354 P.3d 268.)
We recognize that Blancett's initial commitment likely has expired, but our holding here will pertain to any future commitment proceedings.
We need not discuss Blancett's remaining contentions in view of this disposition.
The order is reversed.
We concur:
PERREN, J.
TANGEMAN, J.

All statutory references are to the Penal Code.